**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOHN BETTUA, GIUSEPPINA P. DONIA, :
DERRAL HOWARD, DENISE MILLER, :
CHARLES NAPOLI, VIC PFEFER, :
CHRISTINA RAMER, JEFFREY A. AND :
SANDRA K. ROBINSON, Individually :
And On Behalf Of All Others Similarly :
Situated, :    CIVIL ACTION NO. 08-CV-1832
                            :
          Plaintiffs, :
                            :
        v. :    JURY TRIAL DEMANDED
                            :
SEARS, ROEBUCK AND CO., :
                            :
          Defendant. :

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs, John Bettua, Giuseppina P. Donia, Derral Howard, Denise Miller, Charles

Napoli, Vic Pfefer, Christina Ramer, and Jeffrey A. and Sandra K. Robinson (collectively

"Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other

persons and entities similarly situated, allege the following facts and claims upon knowledge as

to matters relating to themselves and upon information and belief as to all other matters and, by

way of this Complaint, aver as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1.      Plaintiffs bring this class action individually and on behalf of the Classes defined

herein (the "Classes" or collectively, the "Class"), against Defendant, Sears, Roebuck and Co.

("Defendant" or "Sears"), to obtain, *inter alia*, damages and injunctive relief for the proposed

Classes, as defined below.

2.      As alleged and explained more fully below, this action is brought to remedy

violations of applicable law in connection with Sears' marketing, advertising, selling, warranting

and servicing of its Kenmore HE2, HE2t, HE3, HE3t, HE4t, HE5t and other Front-Loading

Automatic Washers (the "Washing Machines" or "Machines"), certain of which are marketed

and sold as part of Defendant's Kenmore Elite line of appliances.  The Washing Machines

contain a serious design defect that prevents adequate water drainage and causes them to (a)

accumulate mold and mildew within the Washing Machines, (b) produce a moldy odor that

permeates consumers' homes if the doors to the Washing Machines are left open, © produce a

mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to

the extent to and for the purpose for which the Washing Machines were advertised, marketed and

sold.

3.      As a result of Sears' false and misleading statements and concealment or material

facts, as well as Sears' other misconduct described in this Complaint, Plaintiffs and the Class

bought thousands of Washing Machines and have suffered -- and continue to suffer -- injury as a

result of the defective nature of these Machines and as a result of Defendant's misconduct.

4.      Plaintiffs assert claims for violation of Magnuson-Moss Act (15 U.S.C. §§ 2301

*et seq.*), Arizona's Consumer Fraud Act (A.R.S. §§44-1251 *et seq.*), Colorado's Consumer

Protection Act (C.R.S. §§6-1-101 *et seq.*), the Florida Deceptive and Unfair Trade Practices Act,

(F.S.A. §§501.201 *et seq.)*, the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01

*et seq.*), the Oklahoma Consumer Protection Act (15 Okl. St. § 751 *et seq.*), the Pennsylvania

Unfair Trade Practices and Consumer Protection Law (73 Pa.C.S.A. §§ 201-1 *et seq.*), and the

Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18 *et seq.*), as well as claims for

breach of written warranty, breach of the implied warranty of merchantability and unjust enrichment under various State's laws.

5.      Plaintiffs seek actual and/or compensatory damages, as well as equitable relief, including the replacement and/or recall of the defective Washing Machines, costs and expenses of litigation, including attorneys' fees, to the extent permitted by applicable law, and all additional and further relief that may be available.

## THE PARTIES

6.      Plaintiff, John Bettua ("Bettua"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Davie, Broward County, Florida.  Moreover, at all times relevant and pertinent to this action, Bettua has been a citizen of the State of Florida and the United States of America and has been domiciled in the State of Florida.  Bettua purchased a Washing Machine on or about June 20, 2006 and took delivery of the Washing Machine on or about June 22, 2006.  Bettua paid approximately $599.88 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.

7.      Plaintiff, Giuseppina P. Donia ("Donia"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Willoughly, Lake County, Ohio.  Moreover, at all times relevant and pertinent to this action, Donia has been a citizen of the State of Ohio and the United States of America and has been domiciled in the State of Ohio.  Donia purchased an HE3 Washing Machine in 2003 and took delivery of the Washing Machine on or about September 15, 2003.  Donia paid approximately $1,000 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

8.      Plaintiff, Derral Howard ("Howard"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Del City, Oklahoma County, Oklahoma. Moreover, at all times relevant and pertinent to this action, Howard has been a citizen of the State of Oklahoma and the United States of America and has been domiciled in the State of Oklahoma.  Howard purchased an HE3 Washing Machine on or about July 4, 2005 and took delivery of the Washing Machine on or about July 9, 2005.  Howard paid approximately $1099.99 for the Washing Machine and, at all pertinent times, used the Machine for its intended purpose.

9.      Plaintiff, Denise Miller ("Miller"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of McFarland, Dane County, Wisconsin.  Moreover, at all times relevant and pertinent to this action, Miller has been a citizen of the State of Wisconsin and the United States of America and has been domiciled in the State of Wisconsin. Miller purchased an HE2 Washing Machine on or about February 17, 2006 and took delivery of the Washing Machine on or about February 24, 2006.  Miller paid approximately $843.99 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

10.     Plaintiff, Charles Napoli ("Napoli"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Surprise, Maricopa County, Arizona.  Moreover, at all times relevant and pertinent to this action, Napoli has been a citizen of the State of Arizona and the United States of America and has been domiciled in the State of Arizona.  Napoli purchased a Kenmore Elite HE2 Washing Machine on or about October 7, 2006 and took delivery of the Washing Machine on or about October 10, 2006.  Napoli paid approximately

-4-

$799.99 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.

11.     Plaintiff, Victor Pfefer ("Pfefer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Aurora, Arapahoe County, Colorado.  Moreover, at all times relevant and pertinent to this action, Pfefer has been a citizen of the State of Colorado and the United States of America and has been domiciled in the State of Colorado.  Pfefer purchased a Kenmore Elite HE3t Washing Machine in or about the Spring of 2004 and took delivery of the Washing Machine shortly thereafter.  Pfefer paid approximately $1,500 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.

12.     Plaintiff, Christina M. Ramer ("Ramer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Shamokin, Northumberland County, Pennsylvania.  Moreover, at all times relevant and pertinent to this action, Ramer has been a citizen of the State of Pennsylvania and the United States of America and has been domiciled in the State of Pennsylvania.  Ramer purchased an HE3t Washing Machine in or about February 7, 2004 and took delivery of the Washing Machine on or about February 12, 2004.  Ramer paid approximately $1,299.99 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

13.     Plaintiffs, Jeffrey A. and Sandra K. Robinson (the "Robinsons"), are, and at all times relevant and pertinent to this action have been, residents and citizens of Wauwatosa, Milwaukee County, Wisconsin.  Moreover, at all times relevant and pertinent to this action, the Robinsons have been  citizens of the State of Wisconsin and the United States of America and have been domiciled in the State of Wisconsin.  The Robinsons purchased a Kenmore Elite HE4t

Washing Machine on or about July 4, 2006 and took delivery of the Washing Machine on or about July 11, 2006.  The Robinsons paid approximately $1,541.74 for the Washing Machine and, at all pertinent times, have used the Machine only for its intended purpose.

14.    Sears, Roebuck and Co. is a New York corporation and maintains its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  At all times relevant and pertinent to this action, Sears has been a citizen of the State of Illinois.  Sears markets and sells Kenmore brand products, including the Washing Machines, throughout the United States, including this judicial district, itself, and by and through its Sears, Kmart and other retail outlets.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.§1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C.§1391, because Defendant does business throughout this district and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in this district and emanated from this district.  Further, Sears maintains its principal place of business in this district.

17.    At all pertinent times, Defendant was engaged in the sale of products, including the Washing Machines, throughout the United States.

18.    At all pertinent times, Sears was in the business of distributing, advertising, marketing, promoting and selling products, including the Washing Machines.

19.     The Washing Machines that form the basis of this Complaint were purchased from Defendant and/or placed in the stream of commerce by Defendant.

## FACTUAL BACKGROUND

### Class Members' Common Factual Allegations

20.     Defendant holds itself out to the public as a leading broadline retailer providing merchandise (including the Washing Machines) and related services.  Defendant is in the business of distributing, and/or selling washing machines through more than 2,400 Sears-branded and affiliated stores in the United States and Canada.

21.     Defendant has sold and/or distributed front-loading Washing Machines for its retailers throughout the United States and Canada.

22.     In recognition of the anticipated useful life of the Machines, Sears expressly warranted that the Washing Machines were reliable, that they were free from defects, and that they were of merchantable quality and workmanship.  Sears specifically represented that the Washing Machines were "designed and manufactured for years of dependable operation" and, in recognition of the anticipated useful life of the Machines, expressly warranted the stainless steel drum of the Washing Machines for its lifetime.  Specifically, Sears provided a "limited lifetime warranty on the stainless steel drum" stating that, "for the lifetime of the washer from the date of purchase," Sears would replace the "Stainless Steel drum due to defective material or workmanship."  Sears also provided each owner with a one-year warranty for mechanical and electrical parts, a two-year warranty on SENSOR SMART™ control board, a five-year warranty on gearcase parts, and a ten-year warranty on the plastic tub.  Sears' express warranty provides coverage for repairs to correct any Washing Machine defect related to materials or workmanship

occurring during the warranty period.  Under this warranty, Sears was obligated, *inter alia*, to

repair the water drainage defect at no charge.  Defendant has these same obligations with respect

to Plaintiffs and all Class members, but has failed to satisfy these obligations.   In conjunction

with each sale, the Defendant marketed, advertised and warranted that the defective Washing

Machines were fit for the ordinary purpose for which such goods were used and were free from

defects, or, at a minimum, would not accumulate mold, mildew, and emit associated odors.

23.    Defendant also makes numerous additional express representations about the

quality of the Washing Machines.  For example, Sears sold the Washing Machines as "High

Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a

voluntary labeling program designed to identify and promote energy-efficient products through a

joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy.

Members of the Class have purchased the Washing Machines, in part, on the basis that the

Machines would save money and energy.  In reality, at the recommendation of Sears and

independently, Class members are having to run empty cycles of hot water and bleach to combat

the mold and mildew problems with the Machines.  Further, Sears recommends running

successive washer cleaning cycles with bleach.  Upon information and belief, the ratings

(Modified Energy factor) provided by Sears to the government entities are not taking into

account the extra loads necessary to run through the Machines in order to attempt to clean the

Machines.

24.    Sears has refused, and continues to refuse, to warn consumers about the drainage

defect inherent in the Washing Machines or to effectively remedy the problems and defect

inherent in the Machines.  Unwilling to admit fault, Sears has sat silently while consumers have

purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable.  Sears has concealed material facts regarding the Washing Machines, including a serious design defect that prevents adequate water drainage and causes the Washing Machines to: (a) accumulate mold and mildew within the Washing Machines; (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open; (c) produce a mold or mildew odor on clothes washed in the Machines; and (d) be unusable in the manner, to the extent and for the purpose for which the Washing Machines were advertised, marketed and sold as a result of the mold and mildew accumulation and odor problems described above.

26.     Upon information and belief, the stainless steel drums, which come with a lifetime warranty, among other things, play a role in the accumulation of mold and mildew within the Washing Machines by, *inter alia*, not fully or properly draining in connection with each and every wash cycle.  Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal ("boot"), which, among other things, does not fully or properly drain. Furthermore, while offering the Washing Machines for sale to the general public, Defendant was aware of the water drainage defect and that it had no effective solution or remedy for the defect. Furthermore, Sears has succeeded in effectively profiting by failing and refusing to correct the defect in the Washing Machines.

26.     Sears is aware that the mold is caused by a drainage defect in the Washing Machines and that none of the proposed solutions it has offered Plaintiffs and the Class members will adequately remedy the defect.

27.    Upon information and belief, Sears knew and was aware, prior to marketing and selling the Washing Machines, that the Machines were inherently defective in that they were substantially likely to cease working in the manner that they were intended to perform during their useful life.  Nevertheless, Sears has failed and refused to inform its customers of the serious defect inherent in the Washing Machines or to advise them regarding the problems that they would encounter when the Machines began to accumulate mold as result of the defect at issue in this case.

28.    Sears has refused, and continues to refuse, to advise consumers about the defect inherent in the Washing Machines or to effectively remedy the problems and defect inherent in the Machines.  Unwilling to admit knowledge of the extent of the problem or fault, Sears has sat silently while consumers have purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable for their intended purpose.

29.    Based upon, *inter alia*, consumer complaints, representations by Sears' representatives (including repair personnel), and information available in the public domain, the number of Washing Machines experiencing mold and mildew growth and accumulation as a result of the water drainage defect dramatically and materially exceeds the failure/defect rates of comparable, non-defective washing machines.  The level of failures is substantially high such that any reasonable consumer would consider the existence of the water drainage design defect material in connection with the purchase of a Washing Machine.  This is particularly true because the Machines often exhibit mold and mildew growth and accumulation within the warranty period, or shortly after the expiration of the warranty period.  Moreover, consumers are

frequently required to spend several hundred dollars (if not more) to attempt to remedy the defect (including the replacement of clothes and other items rendered unusable as a result of the defect). The money spent by consumers to attempt to remedy the defect is wasted, however, because Sears does not have an adequate remedy for the drainage defect.

30.     As a result of the design defect that plagues the Washing Machines, Plaintiffs and other members of the Class have overpaid for the Machines because the value of the Machines was diminished at the time they were sold to consumers. In light of Sears' knowledge of the problems associated with and the serious nature of the defect at issue, Sears knew, or should have known, that it was selling the Washing Machines to consumers with a value that was substantially less than the amount being paid by those consumers. If Plaintiffs and other members of the Class had known about the design defect affecting the Washing Machines, they would not have purchased the Washing Machines, or would have paid significantly less for the Washing Machines.

31.     As a result of the mold or mildew odor that permeates many clothes and other items, including towels, that are "washed" in the Machines, many consumers have been forced to replace clothes, towels and other items that literally have been ruined by the defect in these Washing Machines.

32.     Sears has profited, either directly or indirectly, by concealing the nature of the defect because, by misrepresenting and/or concealing its knowledge regarding the defect at issue and misrepresenting and/or concealing the cause of the problems associated with the defect to consumers, Sears has been able to convince a large number of consumers to purchase the Washing Machines at premium prices, and to pay Sears for repair services (from which Sears

-11-

earns a profit) to address the problems arising from the defect at issue -- even though Sears has no effective remedy for the defect.

33.    As a result of Sears' false and misleading statements and concealment, as well as Sears' other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the Washing Machines and have suffered -- and continue to suffer -- injury as a result of the defective nature of these Washing Machines and as a result of Defendant's misconduct.

34.    Plaintiffs' experiences mirror those of the thousands of other owners of the Washing Machines.  The internet is replete with references to the common and profound problems that consumers have experienced with the Machines, including, but not limited to, the following small sample of representative complaints appearing in one on-line forum:

> I have problems with a moldy, musty smell from my front Kenmore Elite washer.  I too also wished I had never bought it. The use of less water and detergent seemed to be a real plus, but the clothes don't seem to get clean.  I take care of my three little grandchildren so the machine is always in use.  I leave the door open.  I try to wipe out the gasket, but nothing removes the smell. My problem is that the laundry room is right next to the back door and kitchen, so the odor is most annoying.  I would love to have my old frontloader back.  Anyone contemplating a frontloader should ask some hard questions of the salespeople.

> *       *       *

> I purchased a Sears HE1 front loader 4 years ago and have had a chronic problem with mold under the gasket.  I leave the door open and have to wipe the underside of the gasket with bleach occasionally.  It smells all the time and I have not been happy with that aspect of it.  I am going to contact Sears and start a formal complaint process to see where that gets me.  I am hoping they will at least have a retro-fit for it and acknowlege the problem.  I'll keep you posted as to my results.

> *       *       *

I have a Kenmore Elite front load that is now 2 ½ years old. It has smelled musty for about 1 year. I now have found Im not the only one with the problem and wonder if Sears backs this problem? I will be calling on this but it sounds like ... there is no solution to cleaning or drying the problem away. It stinks and is very annoying to have a brand new house and new equipment and then a nasty smell.

\*       \*       \*

I HAVE A KENMORE ELITE FRONT LOAD FOR APPROX 2 YEARS AND THE MUSTY SMELL IS HORRIBLE. IF I LEAVE THE DOOR OPEN, THE ENTIRE LAUNDRY ROOM SMELLS.... HOPEFULLY THE MOTOR BLOWS AND MY HUSBAND LETS ME BUY A TOP LOADER. I GUESS WE ARE ALL STUCK WITH THIS EXPENSIVE NO GOOD WASHER FOR A WHILE.

\*       \*       \*

I have a Kenmore Elite front loading washing machine (3 yrs old). I have spent a fortune replacing smelly towels. I have tried the bleach, baking soda, white vinegar,and Lysol suggestions to get rid of the odor in my towels. I have been told only to use the hottest water possible and on the longest time setting. Strangely enough, nothing else stinks but the towels. The smell is so bad that if you dry off with them, then you'll smell that funky smell on your skin. The only solution I have found is to throw them away. We keep the door open between washes and wipe out the mold as it accumulates. I use the "correct"" HE detergents, but nothing seems to make any difference. I spent a lot of money on this washer and now I am spending a lot of money replacing towels for 3 bathrooms every 4 months! I told my husband that we'd spend less money drying off with paper towels every day.

\*       \*       \*

I'm elated to know I'm not alone in my mold issue!! I thought I was doing something wrong. I love my Kenmore Elite HE3, I've had it about 2 yrs,but not enjoying the mold problem. The savings of detergent, water and energy are great and my washing time is cut in half due to the large amount of cloathes in each load. BUT....I have tried a little bleach and wiping it down after each use

-13-

and leaving the door open all the time but to know avail. I've also tried a little bleach and a small load of just water cycle. (although I'm going to try the "stopping it for 10 min." suggestion.) Still there. My main complaint are my towels! Especially wash cloths. Oiy! I've thrown out several and can't seem to get the soured smell out....

\*       \*       \*

Hi I have been reading many comments. Obviously I am here for a reason as well. I purchased my Kenmore washer and Dryer 2 years ago and although I love them for saving me time and money (supposedly) I find my towels and dish clothes always come out with a horible smell. I have thrown many out because I have not been able to find a solution to the problem. I have tried using household Amonia in with my detergent and always liquid detergent. That helps until someone goes to dry themselves off after a shower then I hear "why do our towels stink?"

I am throwing more towels away these days because of the smell. I even started putting smaller loads in the machine so I am back to doing more loads more often.

\*       \*       \*

I hate my front loading washing machine. I thought by buying it I would be helping because it uses less water, but all the washing over and over and running everything from bleach to tang through it I use more water than I would have with my old top loader. I have a Sears Elite and no matter what I do it smells and like another, if I leave the door open my whole laundry room smells. Knock you over smell. The repair man told me that it is the main problem with the front loader and even when the repair men talk it over among themselves they can't figure out a way to fix the problem. I think we should all get together and sue the manufactures for faulty machines. The mold can't be good for us either and adding that smell just makes it even more so.

I am going to get rid of mine as soon as I have the extra money to buy a new one even though the front loader is new.

Even my clothes smell. I hate it.

\*       \*       \*

-14-

I can't believe how many people have the same problem with their smelly towels. I have had my Kenmore front loader since Jan 06 and it started to smell within months. The towels are definitely worse than all other laundry but the machine can also smell up the laundry room. If this is a universal problem then why aren't the manufacturers responsible ... or liable as they say? I have also seen the scum under the rubber gasket ... I have tried running bleach throught the cycle and wiping with paper towel but the problem never really goes away!

*       *       *

I have a front loader and it has mold...severely...in the water hoses inside of the machine. My husband has been VERY ill for several years and was thought to have MS...no...it was an allergy to the mold in the machine being washed onto his clothes. All of our clothes smelll SOOOOOO bad and all of us have been ill to some degree. Sears would come out and say they couldn't find a reason for the smell....until the last tech came out and showed me the white hoses were now BLACK from mold. And...this being washed onto all of our clothes. I have to replace all of our clothes, bedding, towels...and Sears is being HORRIBLE about the whole problem. I would NEVER buy a front loader again!!!! Be careful!!! Not only is there mold in the rubber boot in the front...but in the hoses inside of the machine!!! Please be careful!!

http://www.dld123.com/q&a/index.php?cid=443

35.     Plaintiffs' experiences, mirroring those of countless other Washing Machine purchasers who have publicly recounted their problems with these models, reveal that these warranties were breached. Sears has long known that the Washing Machines are defective and do not perform as intended, because they are susceptible to and likely to experience mold and mildew growth as a result of the water drainage defect, which Sears has been, and continues to be, unable to remedy.

36.    The Washing Machines purchased by Plaintiffs and Class members fail to work properly, or as intended, because of a defect in design (not because of the ordinary course of usage by Plaintiffs or Class members).

37.    Sears has failed to adequately ensure that the Washing Machines are free from defects.  Before the Washing Machines even reached the market, Sears knew, or was reckless in not knowing, that they: (a) contained an inherent defect; and (b) were not of merchantable quality.

38.    To this day, Sears continues to conceal material information from users, consumers, and the public, concerning the Washing Machines, including, *inter alia*, information showing that: (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.

39.    Sears knowingly concealed material facts regarding the Washing Machines, namely that they are inherently defective and unreliable, and that they are not of merchantable quality, with the intent that consumers would purchase the Machines.

40.    Faced with a substantial number of consumer complaints regarding the defect and problems associated with the Washing Machines, Sears has failed and refused to warn consumers about the defect inherent in these Machines and, instead, has sat by silently while consumers have purchased these defective products.

41.    The mold and mildew problems associated with the Machines are far from innocuous or isolated, as thousands of Washing Machine users have complained to Sears and on internet web sites about the uniform defect plaguing the Machines.

42.     Yet, even after receiving an extraordinary number of complaints from purchasers and users of the Washing Machines, Sears has failed and refused to disclose or warn users of the drainage defect in the Machines. Although Sears was aware of the problems with the Washing Machines early in their product life cycle and, in many cases, before marketing and selling them, it never sought to warn its customers about those problems.

43.     In the end, the harm caused by Defendant's false and misleading statements, warranties and omissions grossly outweighs any benefit that could be attributed to them.

44.     Sears intended for customers to believe its statements and representations about its Washing Machines and to trust that its high-end Washing Machines were and are of first-rate quality. Sears has instead concealed material facts regarding the Washing Machines.

45.     Plaintiffs and Class members reasonably expected that the Washing Machines would not contain a design defect that would substantially impair the Machines' performance and use. Plaintiffs and Class members also reasonably expected that the Machines would not require extensive and expensive repairs (or the purchase of extended or third-party warranties to continuously attempt to fix problems inherent in the Washers) as a result of the defect, which defect was known to Sears at the time of sale. If Sears had not misrepresented and concealed material information regarding the defective nature of the Washing Machines, Plaintiffs and other members of the Class would not have purchased the Machines at premium prices, and on the terms offered.

46.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint.

**Plaintiff John Bettua's Experiences With His Washing Machine**

47.     Bettua purchased one of the Washing Machines (a Kenmore Elite HE3.5) on or about June 20, 2006 from Sears, and received delivery of that Machine on or about June 22, 2006.

48.     Bettua began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about June 2007.

49.     On or about January 31, 2007, in response to Bettua's telephone call to Sears, a Sears technician came to Bettua's home to attempt to address the mold and mildew in the Machine.  The Sears technician advised Bettua that "this is an age old problem [with the Washing Machines] that will never be fixed."  The Sears technician offered to replace the rubber seal in Bettua's Machine for a cost of approximately $400.00 (in addition to the $68.00 service call fee).  Plaintiff declined because the Sears technician said that replacing the rubber seal would not solve the mold and mildew problem.  Specifically, the Sears technician indicated that he would "be back in six months (to replace it again), as they (front-loader washing machines) all do that."

50.     Bettua also contacted Sears' Corporate Office, however, they refused to fix the problem with Bettua's Machine.  Sears has only offered cleaning tips, such as wiping the Machine out after each use.

51.     Bettua's independent efforts to resolve the problem (running empty cycles of hot water with bleach and wiping the inside of the Machine with Clorox) have been unsuccessful in resolving or alleviating the mold and mildew problems plaguing the Washing Machines.

**Plaintiff Giuseppina P. Donia's Experiences With Her Washing Machine**

52.     Donia purchased one of the Washing Machines (a Kenmore Elite HE3) in 2003 and received delivery of that Machine on or about September 15, 2003.

53.     Donia began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (both escaping from the Machine and affecting clothes and other items washed in the Machine) after only one and a half to two years of use of her Washing Machine.

54.     Although Donia raised the mold/mildew issue with a Sears repair person in or about the Summer of 2005, the Sears repairman was unable to offer any effective solution.  The Sears repairman advised Donia to leave the door to the Washing Machine open and to run it empty with white vinegar, but neither method relieved the serious mold/mildew problem that Donia has experienced with the Machine.  Donia's independent efforts to resolve the problem by running the Machine empty with bleach similarly have been unsuccessful in resolving or alleviating the mold/mildew problems, plaguing the Washing Machines.

**Plaintiff Derral Howard's Experiences With His Washing Machine**

55.     Howard purchased one of the Washing Machines (a Kenmore Elite HE3) on or about July 4, 2005 from Sears, and received delivery of that Machine on or about July 9, 2005.

56.     Howard began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July of 2007.

57.     On several occasions, there has been standing water in the bottom of the drum of the Machine after the clothing has been moved to the dryer.  While searching for the source of

the mold and mildew odor, Howard found the inside of the corrugated drain hose covered with

brown mold, which led him to replace the drain hose.  Although this temporarily helped, it has

not relieved the mold and mildew problem in his Machine.

58.    On or about February 1, 2008, Howard sent sears an e-mail and complained about

the problem concerning the mold and mildew in his Machine.  In response, Sears stated,

"[o]ccasionally mildew will form above the water line in the inner tub assembly."  Sears then

provided the following instructions:

> "Set the washer to its highest possible fill level and load size but do
> not add laundry.  Use an all hot water wash setting and allow the wash
> basket to fill, then stop the cycle.  Add an additional 3-5 gallons of
> very hot water using a bucket or similar device.  Add one cup of
> chlorine bleach and continue the cycle for approximately half the
> normal wash cycle.  (Do not allow the machine to advance to a drain
> or rinse cycle).  Stop the cycle and allow the tub to soak for 3-4 hours.
> Resume the cycle and allow the unit to agitate for the rest of the wash
> cycle and drain.  Advance the timer and run a second all hot water
> wash cycle to assure that all bleach water residue is flushed from the
> system.
>
> To clean the seal itself, use a solution consisting of 1/4 cup of bleach
> to 1 gallon of warm water with a small amount of dishwashing
> detergent.  Use this solution to scrub the door seal.
>
> To prevent further odor problems, always leave the washer door open
> between loads to allow a more thorough drying of the interior.  Some
> consumers add a small fan to the laundry room to speed the drying
> process."

59.    Plaintiff Howard's independent efforts (of running empty cycles of hot water with

bleach, wiping the inside of the Machine with Clorox, and leaving the door open) to resolve the

problem have been unsuccessful in resolving or alleviating the mold and mildew problems

plaguing the Washing Machines.

-20-

**Plaintiff Denise Miller's Experiences With Her Washing Machine**

60.     Miller purchased one of the Washing Machines (a Kenmore Elite HE2) on or about February 17, 2006 and received delivery of that Machine on or about February 24, 2006.

61.     Miller began to experience mold and mildew accumulation in the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July 2006.

62.     Although Miller raised the mold/mildew issue with a Sears repairman on or about October 8, 2007, the Sears repairman was unable to offer any effective solution.  The Sears repairman advised her to run bleach through the Machine once a month, but this did not relieve the serious mold/mildew problem that she has experienced with the Machine.  Miller's efforts to resolve the problem by running bleach through the Machine similarly have been unsuccessful in resolving or alleviating the mold/mildew problems plaguing the Washing Machines.  After cleaning her Machine with bleach, the mold continues to persist.

**Plaintiff Charles Napoli's Experiences With His Washing Machine**

63.     Napoli purchased one of the Washing Machines (a Kenmore Elite HE2) on October 7, 2006 and received delivery of that Machine on or about October 10, 2006.

64.     Napoli began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washing the Machine) within six months after purchasing the Washing Machine.

65.     In or about May of 2007, a Sears repairman came to Napoli's home in response to Napoli's complaints about the mold and mildew smell that emanated from Napoli's Machine.

The Sears repairman sold Napoli a Sears cleaning solution product. Napoli ran the Sears cleaning solution product through his Machine; however, the mold and mildew problem continued to occur in Napoli's Machine. Sears offered no other solution at that time, other than stating that mold was a problem with the front-loader Washing Machines. As a result of the mold and mildew problem, Napoli purchased an extended warranty from Sears on or about May 29, 2007.

66.    On or about September 14, 2007, in response to Napoli's telephone call to Sears concerning the mold and mildew problems in the Machine, a Sears repairman again came to Napoli's home. The Sears repairman was again unable to offer any effective solution. The Sears repairman advised Napoli to follow certain cleaning instructions, including running borax and vinegar through the Washing Machine, but this method failed to relieve the serious mold and mildew problem that Napoli has experienced with the Machine. The Sears technician gave Napoli the same Sears cleaning solution that he was given when he purchased the Washing Machine in May 2007. Against, the Sears cleaning solution offered no relief from mold and mildew. The Sears technician further recommended that Napoli clean a particular tube underneath the Machine. When the Sears technician demonstrated to Napoli how to clean the tube underneath his Machine, it emitted a horrible moldy smell and the Sears technician commented, "[y]ou can tell by the way it smells that it needs to be cleaned out." The service charge for September 14, 2007 was $132.00; however, this amount was covered under the extended warranty that Napoli purchased on May 29, 2007.

67.    Napoli has observed mold and mildew underneath the front of the stainless steel drum and on the inside of the rubber gasket within the Machine.

68.     Independently, Napoli has purchased crystal tablets from Lowes® for the purpose of cleaning the Machine and to reduce the smell of the mold and mildew.  Napoli has also followed Sears' advice of running vinegar through the Machine.  These efforts have been unsuccessful in resolving or alleviating the mold and mildew problems plaguing the Machine.

**Plaintiff Vic Pfefer's Experiences With His Washing Machine**

69.     Pfefer purchased one of the Washing Machines (a Kenmore Elite HE3) in or about the Spring of 2004 from The Great Indoors® (a store owned by Sears), and received delivery of that Machine shortly thereafter.

70.     Prior to purchasing the Washing Machine, Pfefer researched various front-loader washing machine models.  Pfefer was particularly interested in the HE3t because it had a high revolutions per minute speed, which would result in a faster drying time and less moisture on towels and articles of clothing.

71.     Pfefer began to experience mold and mildew accumulation in the Washing Machine and to experience mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about December 2006 after purchasing the Washing Machine.

72.     On or about January 10, 2008, Pfefer sent an e-mail to the Customer Care Department at Sears concerning the mold and mildew problem in his Machine.  In response, a Sears Customer Care serviceperson advised Pfefer to perform the following instructions:

> "Before starting the washer, use a mild dishwashing detergent and bleach solution to thoroughly clean the rubber seal assembly around the door.  Set the washer to its highest possible fill level and load size but do not add laundry.  Use an all hot water wash setting and allow the wash basket to fill, then stop the cycle. Using the add-a garment function, add an additional 2-4 gallons of

very hot water using a bucket or similar device. Add three cups of chlorine bleach and continue the cycle for approximately half the normal wash cycle. (Do not allow the machine to advance to a drain or rinse cycle). Stop the cycle and allow the wash basket to soak for 3-4 hours. Resume the cycle and allow the unit to tumble for the rest of the wash cycle and drain. Advance the timer and run a second all hot water wash cycle to assure that all bleach water residue is flushed from the system.

To prevent further odor problems, always leave the washer door open between loads to allow a more thorough drying of the interior. Some consumers add a small fan to the laundry room to speed the drying process."

73.    Pfefer performed the cleaning process pursuant to Sears' instructions, however, the mold and mildew continues to develop in Pfefer's Washing Machine. Pfefer has observed the mold and mildew underneath the stainless steel drum and inside the rubber seal on the door to the Machine. Pfefer's independent efforts to resolve the problem (running Oxyclean with hot water for colored clothes and hot water with bleach for white articles) have been unsuccessful in resolving or alleviating the mold and mildew problems, plaguing the Washing Machines.

74.    As a result of the problems, Pfefer has been forced to replace towels and other articles of clothing at a cost of approximately $200.00 through the date of the filing of this Complaint. Further, Pfefer has experienced increased energy costs, due to the multiple empty loads with bleach that he has been directed by Sears to run through the Machine.

**Plaintiff Christina Ramer's Experiences With Her Washing Machine**

75.    Ramer purchased one of the Washing Machines (a Kenmore Elite HE3t) on February 7, 2004 and received delivery of that Machine on or about February 12, 2004.

76.    Ramer began to experience mold and mildew accumulation in the Washing Machine and to mold/mildew odor problems (both escaping from the Machine and affecting

-24-

clothes and other items washed in the Machine) approximately six months after purchasing the Washing Machine.

77.    Although Ramer raised the mold/mildew issue with Sears repair persons on several occasions, the Sears repair persons were unable to offer any effective solution.  On one occasion, the Sears repairman advised Ramer to use vinegar and bleach, dishwasher detergent, and baking soda to sanitize the Machine, but these methods failed to relieve the serious mold/mildew problem that Ramer has experienced with the Machine.  Further, the Sears repairman indicated to Ramer that the mold and mildew problem is an issue with the Washing Machines and that Ramer would "have to deal with it."  Ramer's independent efforts to resolve the problem by sanitizing the Machine have been unsuccessful in resolving or alleviating the mold/mildew problems plaguing the Washing Machines.  Further, Ramer purchased a mold test kit and the results showed that mold and mildew were prevalent inside the Machine.

78.    On or about September 24, 2007, in response to Ramer's complaints concerning the mold and mildew and after reviewing the results from Ramer's mold test kit, Sears replaced Ramer's Washing Machine with a top-loader machine that was less than half the cost of Ramer's Washing Machine.

**Plaintiffs Jeffrey A. And Sandra K. Robinsons' Experiences With Their Washing Machine**

79.    The Robinsons purchased one of the Washing Machines (a Kenmore Elite HE4t) on July 4, 2006 and received delivery of that Machine on or about July 11, 2006.

80.    Sears and its representatives also represented the Washing Machine as the "best washing machine in the industry."

81.    The Robinsons began to experience mold and mildew accumulation in the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) within four months after purchasing the Washing Machine.

82.    Although they raised the mold/mildew issue with a Sears repairman in or about the Fall of 2006, the Sears repairman was unable to offer any effective solution.  The Sears repairman advised the Robinsons to sanitize the Machine by following the instructions in the Sears manual that accompanied the Washing Machine, but this method failed to relieve the serious mold/mildew problem that the Robinsons have experienced with the Machine.  The Robinsons' independent efforts to resolve the problem by sanitizing the Machine have been unsuccessful in resolving or alleviating the mold/mildew problems plaguing the Washing Machines, even when the sanitizing cycles were performed more frequently than recommended.

83.    In or about October 2007, in response to the Robinsons' telephone call to Sears concerning the mold and mildew problem in the Machine, a Sears repairman came to their home, but was again unable to offer an effective solution to the mold and mildew problem.  The Sears repairman was candid about the problem that plagues the Washing Machines and stated that there is no permanent fix for the mold and mildew problem in the Washing Machines.  The Sears repairman stated that removing and cleaning the mold and mildew from the back of the stainless steel drum, and then replacing the drum's plastic liner and rubber seal, would only provide temporary relief.  The repairman suggested that this temporary fix would not be worth the cost.

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this action on their own behalf and on behalf of all other persons

similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil

Procedure.

### Nationwide Class:

All persons or entities residing in the United States who purchased,
not for resale, a Washing Machine ("Class").

85.    Plaintiffs also bring this action on behalf of the following Sub-Classes, as more

fully set forth below and to the extent appropriate, in the alternative to the claims asserted on

behalf of the Class:

**Arizona:**          All Class members who purchased a Washing Machine, not
for resale, in the State of Arizona ("Arizona Class").

**Colorado:**         All Class members who purchased a Washing Machine, not
for resale, in the State of Colorado ("Colorado Class").

**Florida:**          All Class members who purchased a Washing Machine, not
for resale, in the State of Florida ("Florida Class").

**Ohio:**             All Class members who purchased a Washing Machine, not
for resale, in the State of Ohio ("Ohio Class").

**Oklahoma:**         All Class members who purchased a Washing Machine, not
for resale, in the State of Oklahoma ("Oklahoma Class").

**Pennsylvania:**     All Class members who purchased a Washing Machine, not
for resale, in the State of Pennsylvania ("Pennsylvania
Class").

**Wisconsin:**        All Class members who purchased a Washing Machine, not
for resale, in the State of Wisconsin ("Wisconsin Class").

86.    Excluded from the Class and Sub-Classes are Defendant, its affiliates, employees,

officers and directors, persons or entities which distribute or sell the Washing Machines, persons

who have experienced personal injury as a result of purchasing the Washing Machines, the

Judge(s) assigned to this case and attorneys of record.  Plaintiffs reserve the right to amend these

Class definitions if discovery and further investigation reveals that they should be expanded or

otherwise modified.

87.    **Numerosity**:  The members of the proposed Classes are so numerous that joinder

of all members is impracticable.  Each of the proposed Classes includes thousands of members.

The precise number of members of each of the Classes can be ascertained through discovery,

which will include Defendant's sales, warranty service and other records.

88.    **Commonality And Predominance**:  The following questions of law and fact are

common to the Classes:

(a)    whether the Washing Machines are defective;

(b)    whether, prior to sale, Sears knew that the Washing Machines were
defective;

(c)    whether Sears made false and/ or misleading statements of facts to Class
members concerning the Washing Machines;

(d)    whether Sears omitted material facts and concealed facts from its
communications and disclosures to Plaintiffs and the Class members
regarding the defect inherent in the Washing Machines;

(e)    whether Sears' false and/or misleading statements of facts and
concealment of material facts regarding the Washing Machines were
likely to deceive the public;

(f)    whether, by its conduct, Sears has engaged in unfair methods of
competition, unconscionable acts or practices, and unfair or deceptive acts
or practices in connection with the advertising, marketing and sale of the
Machines;

(g)    whether, by its conduct, Sears violated various state consumer protection
statutes;

(h)     whether Sears has breached its warranty and/or extended warranty running between it and the members of the Class;

(i)     whether Sears has breached its implied warranties running between it and the members of the Class;

(j)     whether, by its conduct, Sears has been unjustly enriched; and

(k)     whether Class members are entitled to recover damages and/or other relief, and, if so, the appropriate amount thereof.

89.     **Typicality**:  The representative Plaintiffs' claims are typical of the claims of the members of the Classes.  Plaintiffs and all Class members have been injured by the same wrongful practices in which Sears has engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

90.     **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

91.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Sears' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of

the Classes do not have a significant interest in individually controlling the prosecution of

separate actions, and individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments and would magnify the delay and expense to all parties

and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know

of no difficulty to be encountered in the management of this action that would preclude its

maintenance as a class action.  Relief concerning Plaintiffs' rights under the laws herein alleged

and with respect to the Classes would be proper.  Sears has acted or refused to act on grounds

generally applicable to the Classes and, as such, final injunctive relief or corresponding

declaratory relief with regard to the members of the Classes as a whole is appropriate.

## NOTICE TO ATTORNEYS GENERAL OF ACTION

92.    A copy of this Complaint shall be mailed to the Attorneys General,

Administrators, Commissioners, or other officers of any State, to the extent required by law, at

the time of the filing of the Complaint.

## FIRST CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class Against Sears
### (Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312)–Written Warranty)

93.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

94.    Sears' Washing Machines are "consumer products" as that term is defined by 15

U.S.C. § 2301(1).

95.    Plaintiffs and Class members are "consumers" as that term is defined by 15

U.S.C. § 2301(3).

96.     Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

97.     Defendant provided Plaintiffs and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

98.     In its capacity as a warrantor, and by the conduct described herein, any attempts by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

99.     All jurisdictional prerequisites have been satisfied.

100.    By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

101.    As a result of Defendant's breach of express warranties, Plaintiffs and the Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SECOND CAUSE OF ACTION**
**Asserted On Behalf Of The Arizona, Colorado, Florida, Ohio, Oklahoma,**
**Pennsylvania And Wisconsin Classes Against Sears**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) - Implied Warranty)**

102.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

103.    Sears' Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

104.     Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

105.     Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

106.     Defendant provided Plaintiffs and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

107.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

108.     All jurisdictional prerequisites have been satisfied herein.

109.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

110.     As a result of Defendant's breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**THIRD CAUSE OF ACTION**
**Asserted On Behalf Of The Arizona Class**
**(Violation Of Arizona's Consumer Fraud Act ("CFA") A.R.S. §§44-1521, *et seq.*)**

111.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

112.    The CFA prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false promise, misrepresentation, or concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Defendant's conduct, as described herein, is in violation of the CFA.

113.    Defendant violated the CFA when it represented, through its advertising, warranties and other express representation, that the Washing Machines had characteristics and benefits that they did not actually have.

114.    Defendant violated the CFA when it falsely represented, through its advertising, marketing, and other express representations, that the Washing Machines were of a certain quality or standard, when they were not.

115.    Defendant violated the CFA by fraudulently concealing from and/or intentionally failing to disclose, to Napoli and the Arizona Class, material information about the Washing Machines in a manner that was deceptive.

116.    Defendant violated the CFA by holding the Washing Machines out as superior in quality, when, in fact, they are defective.

117.    To this day, Defendant continues to violate the CFA by continuing to actively conceal material information about the Washing Machines and by representing to Napoli and the members of the Arizona Class that the Washing Machines are free of defects and/or provide superior cleaning power.

118.    As a direct and proximate cause of Defendant's violation of the CFA, Napoli and the Arizona Class have suffered injury in fact and/or actual damage, in that they purchased

Washing Machines that produce mold and mildew and, thus, are inherently defective.

119.    Napoli and the Arizona Class relied on Defendant's misrepresentations.  Had Defendant disclosed in its marketing and sale statements the true quality of the Washing Machines, Napoli and the Arizona Class would not have purchased, or would have paid significantly less for, the Washing Machines.  Napoli and the Arizona Class have suffered damages as a result.

120.    Napoli and Arizona Class have suffered an injury in fact and lost money in that, had Defendant disclosed the true nature and quality of the Washing Machines, they would not have purchased, or would have paid significantly less for, the Washing Machines.  Napoli suffered further injury in fact and lost money because, as a direct result of the mold and mildew problem, he purchased Sears' extended warranty.  Despite having the Machine repaired, under Napoli's extended warranty, the problem with the mold and mildew continues to the date of the filing of this Complaint.

121.    Napoli, on behalf of himself and all other similarly situated, demands judgment against Defendant for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Napoli and the Arizona Class to purchase the Washing Machines and/or disgorgement of funds received by Defendant from the sale of the Washing Machines, along with interest, attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### Asserted On Behalf Of The Colorado Class
### (Violation of Colorado's Consumer Protection Act ("CCPA") C.R.S. §§6-1-101, *et seq.*)

122.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

123.    Sears' business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the CCPA.

124.    At all relevant times, Sears was a "person" engaged in "trade or commerce" within the meaning of the CCPA and its actions and inactions significantly impacted the public as consumers of Washing Machines.

125.    The practices of Defendant violate the CCPA for, *inter alia*, one or more of the following reasons:

    a.    Sears knowingly represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

    b.    Sears provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements and other information to consumers regarding the performance, reliability, quality and nature of the Washing Machines;

    c.    Sears represented that the Washing Machines were of a particular standard, quality, or grade, when they were of another;

    d.    Sears engaged in unconscionable commercial practices in failing to reveal material facts and information about the Washing Machines, which did, or tended to, mislead Plaintiff Pfefer and the Colorado Class about facts that could not reasonably be known by the consumer;

    e.    Sears failed to disclose material information concerning the Washing Machines, the omission of which would tend to mislead or deceive consumers, including Plaintiff Pfefer and the Colorado Class;

    f.    Sears failed to conspicuously disclose the meaning of "lifetime" guarantee as used in the warranty that accompanied the Washing Machines; and

    g.    Under all of the circumstances, Sears' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

126.    The foregoing acts, omissions and practices proximately caused Pfefer and other members of the Colorado Class to suffer an ascertainable loss in the form of, *inter alia*, monies

spent to replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class
### (Violation Of Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA"), F.S.A., 501.201 *et seq.*)

127.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

128.    At all relevant times, Bettua and all members of the Florida Class were consumers within the meaning of FDUTPA.

129.    At all relevant times hereto, Sears engaged in trade and/or commerce within the meaning of FDUTPA.

130.    The practices of Defendant violate FDUTPA for, *inter alia*, one or more of the following reasons:

a.    Sears omitted and concealed material facts from its communications and disclosures to Bettua and all members of the Florida Class regarding the defect inherent in the Washing Machines;

b.    Sears made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public; and

c.    Sears knew, or was reckless in not knowing, that its statements about the Washing Machines were false and/or misleading.

131.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

-36-

132.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

133.    Had Sears disclosed all material information regarding the Washing Machines to Bettua and all of the Florida Class members, they would not have purchased the Washing Machines.

134.    The foregoing acts and practices proximately caused Bettua and other members of the Florida Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

### SIXTH CAUSE OF ACTION
### Asserted On Behalf Of The Ohio Class
### (Violation Of The Ohio Consumer Sales Practices Act ("CSPA"),
### Ohio Rev. Code § 1345.01 *et seq.*)

135.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

136.    Donia and the members of the Ohio Class are consumers within the meaning of the CSPA, and the Washing Machines are consumer goods within the meaning of the CSPA Ohio Rev. Code § 1345.01(A).

137.    The CSPA prohibits unfair, deceptive and unconsionable practices in consumer sales transactions and provides consumers with private rights to action to redress such conduct. Ohio Rev. Code §§ 1345.02, 1345.09.

-37-

138.    Defendant acted in the face of prior notice that its conduct was deceptive, unfair and unconscionable.  It is well established in CSPA jurisprudence that material omissions and misrepresentations regarding a product constitute violations of the CSPA.  It also is a deceptive act or practice for a supplier to make representations, claims or assertions of fact in the absence of a reasonable basis in fact.  Ohio Admin. Code §§ 109.4-3-10(A).

139.    As a direct and proximate result of Defendant's violation of the CSPA, Donia and members of the Ohio Class have been injured, suffered damages and are entitled to relief, including the recovery of damages, injunctive relief and recovery of attorneys' fees, costs of suit and such additional relief as the Court may deem appropriate and just.

### SEVENTH CAUSE OF ACTION
#### Asserted On Behalf Of The Pennsylvania Class
#### (Violation Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. §§ 201-1, *et seq.*)

140.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

141.    Defendant is a seller and/or distributor of the Washing Machines.

142.    The conduct alleged above constituted unfair methods of competition or unfair or deceptive acts or practices in violation of Section 201-2(4)(v), (vii), (xiv) and (xxi) of the UTPCPL, 73 Pa.C.S.A. §§ 201-1, *et seq.*

143.    The UTPCPL applies to the claims of Plaintiff Ramer and the other members of the Pennsylvania Class because the conduct which constitutes violations of the UTPCPL by the Defendant that occurred within the Commonwealth of Pennsylvania.

144.    Ramer and the other members of the Pennsylvania Class are consumers who purchased the Washing Machines for primarily personal, family or household purposes within

the meaning of 73 Pa.C.S.A. § 201-9.2.

145.    Defendant used and employed unfair methods of competition and/or unfair or

deceptive acts or practices within the meaning of 73 Pa.C.S.A. §§ 201-2 and 201-3.  Such unfair

methods of competition and/or unfair or deceptive acts or practices include, but are not limited to

the following:

> a.    Failing to comply with any written guaranty or warranty given to the
>        buyer at, prior to, or after a contract for the purchase of goods or services
>        was made (§ 201-2(4)(xiv)); and
>
> b.    Engaging in any other fraudulent or deceptive conduct which creates a
>        likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)).

146.    Defendant knew or should have known that the Washing Machines were

defective, were not suitable for normal use, and otherwise were not as warranted and represented

by Defendant.

147.    Defendant's concealments, omissions, deceptions and conduct were likely to

deceive and likely to cause misunderstanding and/or in fact caused Ramer and the other

members of the Pennsylvania Class to be deceived and to misunderstand the suitability of the

Washing Machines for use and Defendant's intent to honor its warranties.

148.    Defendant intended that Ramer and the other members of the Pennsylvania Class

would rely on its misrepresentations, concealment, warranties, deceptions and/or omissions.

149.    Ramer and the other members of the Pennsylvania Class have been damaged as a

proximate result of Defendant's violations of the UTPCPL and have suffered actual,

ascertainable losses by virtue of having purchased or leased the Washing Machines.

150.    As a direct and proximate result of Defendant's violations of the UTPCPL, as set

forth above, Ramer and the other members of the Pennsylvania Class have suffered an

ascertainable loss of money and are therefore entitled to relief, including damages, plus triple

damages, costs and attorneys' fees under Section 201-9.2 of the UTPCPL.

<strong><u>EIGHTH CAUSE OF ACTION</u></strong><br><strong><u>Asserted On Behalf Of The Wisconsin Class</u></strong><br><strong><u>(Violation Of The Wisconsin Deceptive Trade Practices Act ("WDTPA"),</u></strong><br><strong><u>Wis. Stat. Ann. § 100.18, <em>et seq.</em>)</u></strong>

151.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

152.    Defendant made, published, disseminated, circulated, and/or placed before the

public, and/or caused to be made, published, disseminated, circulated, or placed before the

public, advertisements, announcements, statements, and representations to the public relating to

the purchase, sale, and use of the Washing Machines, that contained assertions, representations

and statements of fact concerning the qualities and characteristics of such products.

153.    Such advertisements, announcements, statements and representations were made,

published, disseminated, circulated, and/or placed before the public pursuant to Sears' intent: (a)

to sell, distribute and increase the consumption of the Washing Machines; and/or (b) to induce

the public to enter into contracts and/or obligations relating to the purchase, sale, use of the

Washing Machines.

154.    Sears' aforementioned assertions, representations and statements of fact

concerning the qualities and characteristics of the Washing Machines were untrue, deceptive and

misleading, in violation of the WDTPA.

155.    Sears violated the WDTPA when it represented, through its advertising,

warranties and other express representations, that the Washing Machines had characteristics and

benefits that they did not actually have.

-40-

156.    Sears violated the WDTPA when it falsely represented, through its advertising, marketing, and other express representations, that the Washing Machines were of a certain quality or standard when they were not.

157.    Sears violated the WDTPA by fraudulently concealing from and/or failing to disclose to Plaintiffs Miller and the Robinsons ("Wisconsin Plaintiffs") and the Wisconsin Class the true nature of the Washing Machines.

158.    Sears violated the WDTPA by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing and other communications, material information about the Washing Machines in a manner that was deceptive.

159.    Sears violated the WDTPA by holding the Washing Machines as superior in quality (and, thus, more expensive), when, in fact, they were defective.

160.    To this day, Sears continues to violate the WDTPA by continuing to actively conceal the material information about the Washing Machines and by representing to Wisconsin Plaintiffs and members of the Wisconsin Class that the Washing Machines are free of defects.

161.    As a direct and proximate cause of Defendant's violations of the WDTPA, the Wisconsin Plaintiffs and the Wisconsin Class have suffered injury in fact and/or actual damage, in that they purchased Washing Machines that are unreasonably expensive and inherently defective.

162.    Wisconsin Plaintiffs and the members of the Wisconsin Class relied on Defendant's misrepresentations.  Had Defendant disclosed in its marketing and sales statements the true quality of the Washing Machines, Wisconsin Plaintiffs and the Wisconsin Class would not have purchased the Washing Machines.

163.    Wisconsin Plaintiffs and members of the Wisconsin Class suffered an injury in fact, pecuniary loss and lost money in that, had Defendant disclosed the true nature and quality of the Washing Machines as alleged herein, they would not have purchased the Washing Machines.

164.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgement against Defendant for damages, injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Plaintiffs and the Wisconsin Class to purchase the Washing Machines and/or disgorgement of funds paid by Plaintiffs and the Wisconsin Class to purchase the Washing Machines and/or disgorgement of funds received by Defendant from the sale of the Washing Machines, or injunctive relief in the form of replacement and/or repair of the Washing Machines, along with interest, attorneys' fees and costs.

### NINTH CAUSE OF ACTION
#### Asserted On Behalf Of The Oklahoma Class
#### (Violation Of The Oklahoma Consumer Protection Act ("OCP"), 15 Okl. St. §751 *et seq.*)

165.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

166.    At all relevant times, Howard and all members of the Oklahoma Class are persons within the meaning of OCP.

167.    At all relevant times hereto, Sears engaged in a consumer transaction in the course of its business with Howard and members of the Oklahoma Class within the meaning of OCP.

168.    At all relevant times hereto, Sears engaged in deceptive trade practices with respect to the sale, marketing and servicing of the Washing Machines to Howard and members

of the Oklahoma Class within the meaning of OCP.

169.    At all relevant times hereto, Sears engaged in an unfair trade practice with respect to the sale, marketing and servicing of the Washing Machines to Howard and members of the Oklahoma Class within the meaning of OCP.

170.    The practices of Defendant violate OCP for, *inter alia*, one or more of the following reasons:

   a.    Sears represented to Plaintiff Howard and all members of the Oklahoma Class that the Washing Machines were of a particular standard, style or model, when they were of another; and

   b.    Sears made false representations, knowingly or with reason to know, as to the characteristics, uses, benefits, of the Washing Machines and false representations as to the sponsorship, approval of the Washing Machines.

171.    By the conduct described herein, Defendant has engaged in deceptive trade practices in the context of a consumer transaction, as Defendant has misrepresented and omitted material information concerning the Washing Machines that misled Howard and the Oklahoma Class.

172.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

173.    Had Sears disclosed all material information regarding the Washing Machines to Howard and all of the Oklahoma Class members, they would not have purchased the Washing Machines.

174.    The foregoing acts and practices proximately caused Howard and other members of the Oklahoma Class to suffer actual damages in the form of, *inter alia*, monies spent to repair

the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to

recover such damages, together with appropriate exemplary damages, attorneys' fees and costs

of suit.

### TENTH CAUSE OF ACTION
**Asserted On Behalf Of The Arizona Class Members**
**(Breach Of Written Warranty, A.R.S. § 47-2313)**

175.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

176.    Napoli seeks to recover for Sears' breach of its written warranty, which was

breached by Sears as a result of the conduct described herein.

177.    Sears uniformly warranted all of the Washing Machines against defects in

material or workmanship at a time when it knew that the Washing Machines suffered from a

serious defect and, nevertheless, continued to market and sell the Washing Machines with this

express warranty.

178.    Sears is obligated under the terms of its written warranty to repair and/or replace

the defective Washing Machines sold to Napoli and the Arizona Class.

179.    Sears has breached its written warranty, as set forth above, by supplying the

Washing Machines in a condition which does not meet the warranty obligations undertaken by

Sears, and by failing to repair or replace the defect and/or defective parts.

180.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly,

Napoli and members of the Arizona Class can not and should not be limited to the remedies set

forth in Sears' written warranty and, instead, should be permitted to recover all measure of

appropriate relief.

181.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

182.    Napoli and the Arizona Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

183.    Sears has failed to provide Napoli or the members of the Arizona Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Napoli and members of the Arizona Class.

184.    As a result of Sears' breach of warranty, Napoli and the Arizona Class have suffered damages in an amount to be determined at trial.

### ELEVENTH CAUSE OF ACTION
### Asserted On Behalf Of The Colorado Class Members
### (Breach Of Written Warranty, C.R.S.A. § 4-2-313)

185.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

186.    Pfefer seeks to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

187.    Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

188.    Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Pfefer and the Colorado Class.

189.    Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

190.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Pfefer and members of the Colorado Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

191.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

192.    Pfefer and the Colorado Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

193.    Sears has failed to provide Pfefer or the members of the Colorado Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Pfefer and members of the Colorado Class.

194.    As a result of Sears' breach of warranty, Pfefer and the Colorado Class have suffered damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class Members
### (Breach of Written Warranty, F.S.A. § 672.313)

195.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

196.     Bettua seeks to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

197.     Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

198.     Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines it sold to Bettua and the Florida Class.

199.     Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

200.     As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Bettua and members of the Florida Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

201.     Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears

has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

202.    Bettua and the Florida Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

203.    Sears has failed to provide Bettua or the members of the Florida Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Bettua and members of the Florida Class.

204.    As a result of Sears' breach of warranty, Bettua and the Florida Class have suffered damages in an amount to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Ohio Class Members**
**(Breach Of Written Warranty, Ohio Rev. Code § 1302.26)**

205.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

206.    Donia seeks to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

207.    Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

208.    Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Donia and the Ohio Class.

209.    Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

210.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Donia and members of the Ohio Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

211.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

212.    Donia and the Ohio Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

213.    Sears has failed to provide Plaintiff Donia or the members of the Ohio Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Donia and members of the Ohio Class.

214.    As a result of Sears' breach of warranty, Donia and the Ohio Class have suffered damages in an amount to be determined at trial.

### FOURTEENTH CAUSE OF ACTION
### Asserted On Behalf Of The Oklahoma Class Members
### (Breach Of Written Warranty, 12A Okl. St. 2-313)

215.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

216.    Howard seeks to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

217.    Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

218.    Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Howard and the Oklahoma Class.

219.    Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

220.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Howard and members of the Oklahoma Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

221.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

222.    Howard and the Oklahoma Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

223.    Sears has failed to provide Howard or the members of the Oklahoma Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Howard and members of the Oklahoma Class.

224.    As a result of Sears' breach of warranty, Howard and the Oklahoma Class have suffered damages in an amount to be determined at trial.

**FIFTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Pennsylvania Class Members**
**(Breach Of Written Warranty, 13 Pa. C.S.A. § 2313)**

225.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

226.    Ramer seeks to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

227.    Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

228.    Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Ramer and the Pennsylvania Class.

229.    Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

230.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly,

Ramer and members of the Pennsylvania Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

231.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

232.    Ramer and the Pennsylvania Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

233.    Sears has failed to provide Ramer or the members of the Pennsylvania Class, as a warranty repair and/or replacement, a product that confirms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Ramer and members of the Pennsylvania Class.

234.    As a result of Sears' breach of warranty, Ramer and the Pennsylvania Class have suffered damages in an amount to be determined at trial.

### SIXTEENTH CAUSE OF ACTION
**Asserted On Behalf Of The Wisconsin Class Members**
**(Breach Of Written Warranty, W.S.A. § 402.313)**

235.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

236.    Wisconsin Plaintiffs seek to recover for Sears' breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

237.    Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from a serious defect and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

238.    Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Wisconsin Plaintiffs and the Wisconsin Class.

239.    Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defect and/or defective parts.

240.    As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Wisconsin Plaintiffs and members of the Wisconsin Class can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

241.    Sears has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Sears' knowledge of the defect in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defect inherent in the Washing Machines.

242.    Wisconsin Plaintiffs and the Wisconsin Class have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed to do so.

243.    Sears has failed to provide Wisconsin Plaintiffs or the members of the Wisconsin Class, as a warranty repair and/or replacement, a product that confirms to the qualities and

characteristics that Sears expressly warranted when it sold the Washing Machines to Wisconsin Plaintiffs and members of the Wisconsin Class.

244.    As a result of Sears' breach of warranty, Wisconsin Plaintiffs and the Wisconsin Class have suffered damages in an amount to be determined at trial.

**SEVENTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Arizona Class Members**
**(Breach Of Implied Warranty, A.R.S. §§ 47-2313)**

245.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

246.    Napoli seeks to recover for Sears' breach of implied warranty.

247.    Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Napoli and members of the Arizona Class.

248.    Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears  markets, sells and services the Washing Machines.  Sears provided Napoli and the Arizona Class with an implied warranty that the Washing Machines were merchantable and fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for their ordinary purposes because, *inter alia*, the Washing Machines contain an inherent defect that causes them to accumulate mold and mildew.

249.    The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

250.    Sears knew or had reason to know that Napoli and the members of the Arizona Class purchased the Washing Machines for the purpose of washing clothes and other similar

items.

251.    The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

252.    Napoli and the Arizona Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

253.    Napoli and the Arizona Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Napoli and the Arizona Class an effective remedy.

254.    In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

255.    Sears stands in privity with Napoli and members of the Arizona Class.

256.    By virtue of the conduct described herein, Sears has breached the implied warranty of merchantability.

257.    Napoli and the Arizona Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

### EIGHTEENTH CAUSE OF ACTION
### Asserted On Behalf Of The Colorado Class Members
### (Breach Of Implied Warranty, C.R.S.A. § 4-2-314)

258.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

259.    Pfefer seeks to recover for Sears' breach of implied warranty.

260.    Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Pfefer and members of the Colorado Class.

261.    Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears sells, markets and services the Washing Machines. Sears provided Pfefer and the Colorado Class with an implied warranty that the Washing Machines were merchantable and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for their ordinary purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

262.    The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

263.    Sears knew or had reason to know that Pfefer and the members of the Colorado Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

264.    The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

265.    Pfefer and the Colorado Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

266.    Pfefer and the Colorado Class have provided sufficient and timely notice to Sears

regarding the problems they experienced with the Washing Machines and, notwithstanding such

notice, Sears has failed and refused to offer Pfefer and the Colorado Class an effective remedy.

267.    In addition, Sears has received, on information and belief, thousands of

complaints and other notices from consumers advising them of the defect associated with the

Washing Machines.

268.    Sears stands in privity with Pfefer and members of the Colorado Class.

269.    By virtue of the conduct described herein, Sears breached the implied warranty of

merchantability.

270.    Pfefer and the Colorado Class have been damaged as a direct and proximate result

of Sears' breach of the implied warranty.

**NINETEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Florida Class Members**
**(Breach Of Implied Warranty)**

271.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

272.    Bettua seeks to recover for Sears' breach of implied warranty.

273.    Sears' implied warranty of merchantability accompanied the sale of the Washing

Machines sold to Bettua and members of the Florida Class.

274.    Sears is, and at all relevant times was, a merchant of the Washing Machines.

Sears market, sells and services the Washing Machines.  Sears provided Bettua and the Florida

Class with an implied warranty that the Washing Machines were merchantable and fit for the

ordinary purposes for which they were sold.  The Washing Machines are not fit for their ordinary

purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

275.    The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

276.    Sears knew or had reason to know that Bettua and the members of the Florida Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

277.    The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

278.    Bettua and the Florida Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

279.    Bettua and the Florida Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Bettua and the Florida Class an effective remedy.

280.    In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

281.     Sears stands in privity with Bettua and members of the Florida Class.

282.     By virtue of the conduct described herein, Sears breached the implied warranty of merchantability.

283.     Bettua and the Florida Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

**TWENTIETH CAUSE OF ACTION**
**Asserted On Behalf Of The Ohio Class Members**
**(Breach Of Implied Warranty, Ohio Rev. Code § 1302.27)**

284.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

285.     Donia seeks to recover for Sears' breach of implied warranty.

286.     Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Donia and members of the Ohio Class.

287.     Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears markets, sells and services the Washing Machines. Sears provided Donia and the Ohio Class with an implied warranty that the Washing Machines were merchantable and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for their ordinary purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

288.     The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

289.    Sears knew or had reason to know that Donia and the members of the Ohio Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

290.    The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

291.    Donia and the Ohio Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

292.    Donia and the Ohio Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Donia and the Ohio Class an effective remedy.

293.    In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

294.    Sears stands in privity with Donia and members of the Ohio Class.

295.    By virtue of the conduct described herein, Sears breached the implied warranty of merchantability.

296.    Donia and the Ohio Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

### TWENTY-FIRST CAUSE OF ACTION
### Asserted On Behalf Of The Oklahoma Class Members
### (Breach Of Implied Warranty, 12A Okl. St. Ann. § 2-314)

297.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

298.　　Howard seeks to recover for Sears' breach of implied warranty.

299.　　Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Howard and members of the Oklahoma Class.

300.　　Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears markets, sells and services the Washing Machines. Sears provided Howard and the Oklahoma Class with an implied warranty that the Washing Machines were merchantable and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for their ordinary purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

301.　　The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing machines unfit for the ordinary purpose of washing clothes and other similar items.

302.　　Sears knew or had reason to know that Howard and the members of the Oklahoma Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

303.　　The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

304.　　Howard and the Oklahoma Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

305.    Howard and the Oklahoma Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Howard and the Oklahoma Class an effective remedy.

306.    In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

307.    Sears stands in privity with Howard and members of the Oklahoma Class.

308.    By virtue of the conduct described herein, Sears breached the implied warranty of merchantability.

309.    Howard and the Oklahoma Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

**TWENTY-SECOND CAUSE OF ACTION**
**Asserted On Behalf Of The Pennsylvania Class Members**
**(Breach Of Implied Warranty, 13 Pa. C.S.A. § 2314)**

310.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

311.    Ramer seeks to recover for Sears' breach of implied warranty.

312.    Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Ramer and members of the Pennsylvania Class.

313.    Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears markets, sells and services the Washing Machines. Sears provided Ramer and the Pennsylvania Class with an implied warranty that the Washing Machines were merchantable and

fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for their ordinary purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

314. The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

315. Sears knew or had reason to know that Ramer and the members of the Pennsylvania Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

316. The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

317. Ramer and the Pennsylvania Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

318. Ramer and the Pennsylvania Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Ramer and the Pennsylvania Class an effective remedy.

319. In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

320.    Sears stands in privity with Ramer and members of the Pennsylvania Class.

321.    By virtue of the conduct described herein, Sears breached the implied warranty of merchantability.

322.    Ramer and the Pennsylvania Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

**TWENTY-THIRD CAUSE OF ACTION**
**Asserted On Behalf Of The Wisconsin Class Members**
**(Breach Of Implied Warranty, W.S.A. § 402.314)**

323.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

324.    Wisconsin Plaintiffs seek to recover for Sears' breach of implied warranty.

325.    Sears' implied warranty of merchantability accompanied the sale of the Washing Machines sold to Wisconsin Plaintiffs and members of the Wisconsin Class.

326.    Sears is, and at all relevant times was, a merchant of the Washing Machines. Sears markets, sells and services the Washing Machines.  Sears Provided Wisconsin Plaintiffs and the Wisconsin Class with an implied warranty that the Washing Machines were merchantable and fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for their ordinary purposes because, *inter alia*, they contain an inherent defect that causes the Machines to accumulate mold and mildew.

327.    The alleged defect is so basic to the operation and purpose of the Washing Machines that it renders the Washing Machines unfit for the ordinary purpose of washing clothes and other similar items.

328.     Sears knew or had reason to know that Wisconsin Plaintiffs and the members of the Wisconsin Class purchased the Washing Machines for the purpose of washing clothes and other similar items.

329.     The Washing Machines do not conform to the promises and affirmations uniformly issued by Sears in its sales materials and warranties, and are not of fair or average quality.

330.     Wisconsin Plaintiffs and the Wisconsin Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Sears or by operation of law in light of Sears' unconscionable conduct.

331.     Wisconsin Plaintiffs and the Wisconsin Class have provided sufficient and timely notice to Sears regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Sears has failed and refused to offer Wisconsin Plaintiffs and the Wisconsin Class an effective remedy.

332.     In addition, Sears has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defect associated with the Washing Machines.

333.     Sears stands in privity with Wisconsin Plaintiffs and members of the Wisconsin Class.

334.     By virtue of the conduct described herein, Sears breached the implied warranty of merchantability.

335.     Wisconsin Plaintiffs and the Wisconsin Class have been damaged as a direct and proximate result of Sears' breach of the implied warranty.

## TWENTY-FOURTH CAUSE OF ACTION
### Asserted On Behalf Of The Arizona Class Members
### (Unjust Enrichment)

336.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

337.    This claim is asserted in the alternative on behalf of Napoli and the members of the Arizona Class, to the extent that there is any determination that Napoli does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

338.    Napoli and the Arizona Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Napoli and the Arizona Class.

339.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

340.    Napoli, on behalf of himself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

## TWENTY-FIFTH CAUSE OF ACTION
### Asserted On Behalf Of The Colorado Class Members
### (Unjust Enrichment)

341.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

342.     This claim is asserted in the alternative on behalf of Pfefer and the members of the Colorado Class, to the extent that there is any determination that Pfefer does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

343.     Pfefer and the Colorado Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Pfefer and the Colorado Class.

344.     It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

345.     Pfefer, on behalf of himself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

**TWENTY-SIXTH CAUSE OF ACTION**
**Asserted On Behalf Of The Florida Class Members**
**(Unjust Enrichment)**

346.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

347.     This claim is asserted in the alternative on behalf of Bettua and the members of the Florida Class, to the extent that there is any determination that Bettua does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

348.    Bettua and the Florida Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Bettua and the Florida Class.

349.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

350.    Bettua, on behalf of himself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

**TWENTY-SEVENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Ohio Class Members**
**(Unjust Enrichment)**

351.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

352.    This claim is asserted in the alternative on behalf of Donia and the members of the Ohio Class, to the extent that there is any determination that Donia does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

353.    Donia and the Ohio Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Donia and the Ohio Class.

354.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

355.    Donia, on behalf of herself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Asserted On Behalf Of The Oklahoma Class Members**
**(Unjust Enrichment)**

356.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

357.    This claim is asserted in the alternative on behalf of Howard and the members of the Oklahoma Class, to the extent that there is any determination that Howard does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

358.    Howard and the Oklahoma Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Howard and the Oklahoma Class.

359.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

360.    Howard, on behalf of himself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

## TWENTY-NINTH CAUSE OF ACTION
### Asserted On Behalf Of The Pennsylvania Class Members
### (Unjust Enrichment)

361.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

362.    This claim is asserted in the alternative on behalf of Ramer and the members of the Pennsylvania Class, to the extent that there is any determination that Ramer does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

363.    Ramer and the Pennsylvania Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Ramer and the Pennsylvania Class.

364.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

365.    Ramer, on behalf of herself and all others similarly situated, seeks restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

## THIRTIETH CAUSE OF ACTION
### Asserted On Behalf Of The Wisconsin Class Members
### (Unjust Enrichment)

366.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

367.    This claim is asserted in the alternative on behalf of Wisconsin Plaintiffs and the members of the Wisconsin Class, to the extent that there is any determination that Wisconsin Plaintiffs do not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

368.    Wisconsin Plaintiffs and the Wisconsin Class conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Wisconsin Plaintiffs and the Wisconsin Class.

369.    It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

370.    Wisconsin Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

        a.    For an order certifying the Classes, pursuant to Fed.R.Civ.P.23(b)(3),

-71-

appointing Plaintiffs as representatives of the Classes, and appointing Plaintiffs' counsel to represent the Classes;

b.      For restitution and disgorgement of all amounts obtained by Sears as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.      For all recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

d.      For actual and/or statutory damages for injuries suffered by Plaintiffs and the Classes, in the maximum amount permitted by applicable law;

e.      For payment of costs of suit herein incurred;

f.      For both pre-judgment and post-judgment interest on any amounts awarded;

g.      For appropriate injunctive relief;

h.      For payment of reasonable attorneys' fees and costs, as may be allowable under applicable law; and;

i.      For such other and further relief as the Court may deem proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all claims so triable.

July 1, 2008                                          Respectfully submitted,


_____/s/ Glenn Orr_____
Joseph Patrick Shea
Glenn Orr
Law Offices of Joseph Patrick Shea
2400 N. Western Avenue, Suite 205
Chicago, Illinois 60647
Telephone: (773) 365-0040
Facsimile: (773) 772-2421

James E. Miller
Patrick A. Klingman
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com

James C. Shah
Natalie Finkelman Bennett
Nathan Zipperian
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
kleser@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVITZ SUNSHINE
& REGENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone:  (415) 489-7700
Facsimile:  (415) 489-7701
Rkravitz@linerlaw.com
Mborden@linerlaw.com

**Attorneys for Plaintiffs and the Proposed
Classes**