# EXHIBIT 12

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80784-CIV-RYSKAMP/VITUNAC

JANET DENNIS and CLIFF
JAHRMARKT, individually and in
on behalf of all others similarly situated,

     Plaintiffs,

v.

WHIRLPOOL CORP., a Delaware corporation,

     Defendant.

_____/

### ORDER GRANTING MOTION TO DISMISS

THIS CAUSE comes before the Court pursuant to Defendant Whirlpool Corp.'s

("Defendant") Motion to Dismiss, or, in the Alternative, to Strike the Class Allegations and

Require a More Definite Statement, filed October 25, 2006 **[DE 19]**.  Plaintiffs Janet Dennis

("Dennis") and Cliff Jahrmarkt ("Jahrmarkt", collectively, "Plaintiffs") responded on December

5, 2006 **[DE 28]**, also filing a Motion to Strike Defendant's Motion to Dismiss **[DE 28]**.

Defendant replied on December 22, 2006 **[DE 31]**.  This motion is ripe for adjudication.

### I. BACKGROUND

This is a class action suit brought on behalf of Plaintiffs and others similarly situated who

own Defendant's refrigerators, including but not limited to models KSRD25FKSS15 and

KSRD25FKWH04 that were marketed, advertised, warranted and/or sold under the brand name

"KitchenAid" ("refrigerators").  (Complaint, 1, 3.)

2

Plaintiffs attach to the Complaint the warranty that accompanies each new KitchenAid

refrigerator.  The warranty states in pertinent part:

### ONE-YEAR LIMITED WARRANTY

> For one year from the date of purchase, when this major appliance
> is operated and maintained according to instructions attached to or
> furnished with the product, KitchenAid... will pay for factory
> specified parts and repair labor to correct defects in materials or
> workmanship.  Service must be provided by a KitchenAid
> designated service Company.

......

### SECOND THROUGH FIFTH YEARS LIMITED WARRANTY ON CAVITY LINER
### AND SEALED REFRIGERATION SYSTEM PARTS

> In the second through fifth years from the date of purchase, when
> this major appliance is operated and maintained according to
> instructions attached to or furnished with the product, KitchenAid
> will pay for replacement or repair of the refrigerator/freezer cavity
> liner (including labor costs) if the part cracks due to defective
> materials or workmanship....

(Complaint, Exhibit A.)

Dennis alleges that she purchased her refrigerator from BrandsMart U.S.A. in September

of 2003 and that the refrigerator was delivered to her home on September 6, 2003.  (Complaint,

26.)  In August of 2006, she allegedly "detected a series of hairline cracks and splits in the side

wall of the interior lining of her refrigerator."  (Complaint, 27.)  She does not allege that she

complained to BrandsMart or Defendant regarding her cracked liner; nor does she allege that she

requested warranty service, or that Defendant denied any such request.  She also does not allege

that she repaired or replaced the liner at her own expense.

Jahrmarkt alleges that he purchased his refrigerator from the builder who constructed his

3

St. Lucie County Florida residence, which he purchased in October 2005. (Complaint, 28.) The

builder allegedly purchased the refrigerator from Jetson TV and Appliance ("Jetson") of Port St.

Lucie, Florida on or about March 11, 2004. (Complaint, 28.) In June of 2006, Jahrmarkt

"discovered a fracture in the bottom cavity of the refrigerator's interior liner." (Complaint, 29.)

He contacted Jetson to complain about the liner cracking, requested service, and paid Jetson $65

"to assess the damage to his refrigerator." (Complaint, 30.) He does not allege, however, that he

asked Defendant to reimburse him for the labor charge pursuant to the warranty. Jahrmarkt

complained to Defendant on three occasions in June of 2006 regarding the cracked liner.

Defendant offered to repair the liner and shipped a repair kit for installation by a service

technician. (Complaint, 31-34.) Jahrmarkt was dissatisfied with the proposed repair and alleges

that he demanded that Defendant instead replace the liner. (Complaint, 33-35.) Jahrmarkt does

not allege that he has given Defendant an opportunity to repair the liner, nor does he allege that

he requested and was denied a replacement refrigerator.

Plaintiffs further allege that "[i]n addition to being unsightly and diminishing the value of

the KitchenAid Refrigerators, the cracks reduced the effectiveness and performance of the

KitchenAid Refrigerators" and "create a dangerous condition inside the KitchenAid Refrigerator

by providing a place for mold and/or other foreign elements to grow." (Complaint, 5.) Neither

Plaintiff, however, alleges having experiencing actual diminished refrigeration performance,

mold, or mildew in their refrigerator.

Plaintiffs bring this action as a class action on their own behalf and on behalf of all

purchasers of the subject refrigerators. Count I, breach of express warranty, alleges that

Defendant failed to pay for factory specified parts and repair labor to correct defects in materials

4

or workmanship. Count II is a cause of action for breach of implied warranty, alleging that

Defendant breached its implied representation and warranty that the refrigerators were free of

defects, were merchantable and or fit for their intended purpose. The breach counts also request

injunctive relief, complaining that "Defendant continues to place its defective products on the

market and provide wholly inadequate remedies to consumer complaints." (Complaint, 52.)

Count III is a cause of action for negligence, alleging that Defendant failed to disclose the known

risks associated with the refrigerators and allowed the sale and use of the refrigerators when it

knew they would not perform as intended. Count IV, unjust enrichment, alleges that it is

inequitable for Defendant to retain the benefits received from the sale of the refrigerators at the

expense of the class. Count V, money had and received, mirrors the unjust enrichment count.

Defendant has moved to dismiss the complaint with prejudice, or, in the alternative, to

strike the class allegations and require a more definite statement of the claims.

## II.    MOTION TO STRIKE CLASS ALLEGATIONS

Rule 23(c)(1)(A) provides that "[w]hen a person sues or is sued as representative of a

class, the court must-at an early practicable time-determine by order whether to certify the action

as a class action." Although "sometimes it may be necessary for the court to probe behind the

pleadings before coming to rest on the certification question," Agan v. Katzman & Korr, P.A.,

222 F.R.D. 692, 696 (S.D. Fla. 2004), a court may strike class allegations as soon as

"practicable." See Rule 23(c)(1)(A). See also Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th

Cir. 1985) ("Although in some cases, a district court should allow discovery to aid a

determination of whether a class action is maintainable, the plaintiff bears the burden of

5

advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or

that discovery is likely to produce substantiation of the class allegations."). See Lumpkin v. E.I.

DuPont De Nemours & Co., 161 F.R.D. 480, 481-82 (M.D. Ga. 1995) (striking class allegations

and stating that "awaiting further discovery will only cause needless delay and expense").

Although the putative class claims are based on an alleged design defect in the cavity

liner, the majority of KitchenAid refrigerator owners have not experienced any report or problem

with the liner. Defendant's service data show that only about .31% of all KitchenAid refrigerator

sold in the United States since January 1, 2000 have needed a service call relating to cracking of

the cavity liner. (Exhibit 1; 2a, 13 and Table 1.)[1]  In fact, the service data showed that only one

KitchenAid refrigerator owned in the United States has reported potential mold and mildew

growth in the area of a minor crack. (Exhibit 1; 2c, 16.)

The typicality requirement of Rule 23(a)(3) requires Plaintiffs to show that their claims

arise from the same event or are based on the same legal theory as the claims of the class

members. See Lumpkin, 161 F.R.D. at 482. The Complaint and the KitchenAid service data

show, however, that all machines are not subject to the same liner cracking problem and that the

majority of owners have no claims against Defendant. Most owners bought, and had used for

years without requiring repairs, refrigerators that had provided those owners with the bargained

for benefits. Among the tiny percentage of refrigerator owners who have experienced the liner

cracking problem, different owners have requested a variety of warranty remedies from

Defendant. Defendant has repaired, or attempted to repair, approximately 3,690 refrigerators

---

[1]  Plaintiffs asked the Court to strike Defendant's motion on the grounds that Defendant's exhibits are improper under Rule 12(b)(6). Defendant's exhibits are proper, however, as Defendant introduced them in support of its motion to strike the class allegations.

6

under the warranty, at no cost to the owner, and voluntarily provided various customer

satisfaction resolutions, including approximately 1,827 new refrigerators or refunds, to many of

the owners who are dissatisfied with the warranty repair.  (Exhibit 1; 13, 18 and Tables 1, 3.)

Plaintiffs' allegations fail to demonstrate that their claims are typical of those of the proposed

class.  Class action certification is entirely inappropriate given the rarity of the alleged problem:

> [W]here the portion of the proposed class that even suffered
> malfunctions appears to be tiny, plaintiffs' proposal to certify the
> class of all camera owners, then determine which few suffered
> malfunctions, and then determine which few of those few even
> arguably can attribute the malfunctions to the design defect here
> alleged, would render the class action device nothing more than a
> façade for conducting a small number of highly individualized
> cases... Accordingly, the plaintiffs, at a minimum, have failed to
> satisfy the requirements of Rule 23(b)(3) that questions of law or
> fact common to the members of the class predominate over any
> questions affecting only individual members....

In Re Canon Cameras Litigation, 237 F.R.D. 357, 360 (S.D.N.Y. 2006).

Furthermore, Plaintiffs cannot meet Rule 23(a)(2)'s requirement that they plead and prove

common issues of fact or law or Rule 23(b)(3)'s "far more demanding" requirement that any

common issues predominate over individual issues.  Amchem Products, Inc. v. Windsor, 521

U.S. 591, 623-24 (1997).  The individual facts of each KitchenAid refrigerator owner's

experience mean that each owner's claim will stand or fall on its own, not in lockstep with every

other owner's claim.  See Lumpkin, 161 F.R.D. at 482 (striking class allegations for failure to

satisfy Rule 23(a)(2) and observing that "[c]ommonality requires that generalized proof will be

available to the class as a whole").  Although Plaintiffs purport to identify nine common

questions of fact and law, it is apparent that those questions are not in fact common in the

7

relevant sense; they do not rest on uniform facts and could not be answered the same way for

every KitchenAid refrigerator owner.  The facts relevant to establish whether each refrigerator

owner has a buyer seller relationship for contractual privity with Defendant will vary for each

plaintiff.  The facts relevant to prove a breach of any warranty also will differ by each individual

owner: each owner must prove that, after the owner provided proper notice to Defendant,

Defendant failed to pay for replacement parts and repair labor to correct defects in materials or

workmanship during the five-year limited warranty.  The element of pre-suit notice also depends

on facts individual to each owner.  Plaintiffs contend that individual class members need not

prove pre-suit notice because at least 3,699 customers have complained about the same issue.

Such is not the law.  Notice is an element of any warranty claim on which the plaintiff bears the

burden of proof.  See Fla. Stat. § 672.607(3)(a) (owner must prove that, within a reasonable time

after discovery of any breach, he or she notified Defendant of the breach, otherwise the

individual is "barred from any remedy").  Each owner must prove that he or she suffered damage

as a result of the breach of warranty.  Yet neither the liner cracking problem, if any, nor

Defendant's responses to owners' complaints are uniform.  Each putative class member must

answer dozens of individual damages questions, including the threshold question of whether he

or she suffered any damages at all.  See Fla. Stat. § 672.607(4) (burden on buyer to prove breach

and damages).  Finally, courts have rejected efforts to ignore state law variations in nationwide

warranty class actions and have held that such variations render those putative class actions

unmanageable.  See Szabo v. Bridgeport Machs., Inc., 249 F.2d 672, 674 (7th Cir. 2001) (state

law variations "cut strongly against nationwide classes"); Spence v. Glock, 227 F.3d 308, 313

(5th Cir. 2000) (denying class certification based in part on state law variations); Castano v. Am.

8

Tobacco Co., 84 F.3d 734, 743 (5th Cir. 1996) (same).  Given the numerous individual questions

of liability and damages, Plaintiffs' warranty claims cannot, as a matter of law, be certified for

class treatment.

The negligence, unjust enrichment and "money had and received" claims also cannot be

certified as a matter of law.  See Riviera v. Wyeth Ayerst Labs., 283 F.3d 315, 319-20 (5th Cir.

2002) (reversing certification of nationwide class in dismissing claims because the non-incident,

uninjured plaintiffs had no standing to bring claims for economic loss based on alleged defects

that did not manifest); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir.)

(affirming denial of class certification, including denial of certification under Rule 23(b)(2), in

putative class action against the manufacturer of pacemaker lead and observing that the laws of

negligence are different in some respects from state to state), *opinion amended and superseded*

*on denial of rehearing*, 273 F.3d 1266 (9th Cir. 2001); Castano, 84 F.3d at 743 & n.15

(identifying numerous variations among state laws regarding tort claims and affirmative

defenses).  The class allegations are hereby stricken.

### III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss for failure to state a claim should be granted where "the complaint

alleges no set of facts, which, if proved, would entitle the plaintiff to relief."  T.W.M. v. Am.

Med. Sys., Inc., 886 F. Supp. 842, 843 (N.D. Fla. 1995).  Plaintiffs' warranty claims fail due to

lack of privity of contract.  Privity of contract is an essential element to any claim for breach of

express or implied warranty:

Case 1:08-cv-01832     Document 32-16     Filed 08/11/2008     Page 10 of 10
Case 9:06-cv-80784-KLR     Document 38     Entered on FLSD Docket 03/13/2007     Page 9 of 18

9

> The law of Florida is that to recover for the breach of the warranty,
> either express or implied, the plaintiff must be in privity of contract
> with the defendant. Kramer v. Piper Aircraft Corp., 520 So.2d 37
> (Fla. 1988); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.
> 1976). "Privity is required in order to recover damages from the
> seller of a product for breach of express or implied warranties."
> Intergraph Corp. v. Stearman, 555 So.2d 1282, 1283 (Fla. 2d DCA
> 1990). "A warranty, whether express or implied, is fundamentally
> a contract. The contract cause of action requires privity."

Id. at 844. A remote manufacturer cannot be in privity of contract with a plaintiff who did not

purchase that product from the manufacturer. See id. at 844-45 ("A plaintiff who purchases the

product, but does not buy it directly from the defendant, is not in privity with the defendant.")

O'Connor v. Kawasaki Motors Corp., U.S.A., 699 F. Supp. 1538, 1543-44 (S.D. Fla. 1988)

(dismissing express and implied warranty claims against manufacturer in stating that "[a] buyer-

seller relationship must be present in order for him to be liable under the statute and the

information made by the seller must have become the basis of the bargain").

Plaintiffs vainly attempt to create privity where none exists. First, Plaintiffs attempt to

circumvent the privity requirement by claiming that they were "third-party beneficiaries of

warranties that ran from [Defendant] to its agents, the dealers and sellers of [Defendant]

appliances." (Complaint, 48, 58.) Florida's Uniform Commercial Code provides, however, that

family or household members of the buyer, or servants or agents of the buyer, are guaranteed

third-party beneficiary status. See Fla. Stat. § 672.318. Plaintiffs are not family members,

houseguests, servants, or agents of Defendant's direct customers or "trade partners" and are

therefore not statutory third-party beneficiaries of the sales agreements or of any accompanying

warranty between Defendant and its direct customers. See Favors v. Firestone Tire & Rubber

Co., 309 So.2d 69, 73 (Fla. 4th DCA 1975) (affirming dismissal of third-party express warranty